Sylvestre Villagomez **Castro**,
Plaintiff/Appellant,
v.
**Division of Public Lands**,
Department of Lands And Natural Resources,
Defendants/Appellees.
Appeal No. 96-006
Civil Action No. 94-1275
November 28, 1997

Argued and Submitted September 30, 1997

Counsel for Appellant: Reynaldo O. Yana and Antonio M. Atalig, Saipan.

Counsel for Appellees: William Bush (Daniel L. Furrh), Special Assistant Attorney General, Division of Public Lands, Saipan.

BEFORE: TAYLOR, Chief Justice, VILLAGOMEZ, Justice and WHITE, Special Judge.

TAYLOR, Chief Justice:

¶1 ■ Appellant, Sylvestre Villagomez Castro ("Castro"), appeals the Superior Court's Findings of Facts and Conclusions of Law dated January 17, 1996, ruling that Castro's claim for a land exchange against the Division of Public Lands, Department of Lands and Natural Resources ("DLNR") is barred by the twenty-year statute of limitations of 7 CMC § 2502(b). We have jurisdiction pursuant to 1 CMC §3102(a). We reverse on other grounds and remand with instructions to dismiss this claim for failure to state a cause of action.

## ISSUE AND STANDARD OF REVIEW

¶2 We are asked to determine whether the Superior Court erred in ruling that Castro's claim is barred by the statute of limitations. Because we reverse on other grounds, we will not discuss this issue.

¶3 ■ The issue upon which we reverse is whether the Public Purpose Land Exchange Act creates a judicial cause of action. This is a question of law which we review de novo. *Rios v. Marianas Pub. Land Corp.*, 3 N.M.I. 512, 518 (1993).

## FACTS AND PROCEDURAL BACKGROUND

¶4 Castro's father, Marcelliano Castro ("Marcelliano"), allegedly owned land in the Wing Beach area ("Wing Beach property"),[1] consisting of approximately thirteen hectares. Marcelliano had nine children, all of whom were or are persons of Northern Marianas descent. In 1933, two years after Marcelliano's death, one of his children, Jesus Castro ("Jesus"), purporting to act on behalf of all the children, sold the Wing Beach property to Nanyo Kohatsu Kabushiki Kaisa ("NKK").[2] In 1935, Castro was sent to Pagan and Jesus was sent to Rota. Castro claims that he and his siblings did not learn of Jesus' sale until after they returned to Saipan and found the Wing Beach property cordoned off for use as a military retention area or "red flag" area.[3] The land sale by Jesus was not consented to by any of his eight siblings. The record lacked any evidence as to precisely when Castro returned to Saipan.[4]

¶5 In 1971, Santiago Castro ("Santiago"), another son of Marcelliano, applied to have the Wing Beach property registered in Marcelliano's name. The Land Commission Land Registration Team denied Santiago's 1971 application and registered title to the Wing Beach property in the Trust Territory of the Pacific Islands ("TTPI").[5] In 1976, Santiago made a second claim for the property which was again denied, and the Land Commission issued a determination of ownership identifying the TTPI as the title holder.[6] In addition to the 1971 and 1976 applications for the Wing Beach property which were made by Santiago on behalf of all the heirs of Marcelliano, in 1968, Castro applied for registration of land in Chalan Kiya. No further action was taken with respect to the Wing Beach property until this case was filed by Castro against DLNR on November 30, 1994, in the Superior

---

[1] *Castro v. Div. of Pub. Lands, Dep't of Lands & Natural Resources*, Civ. No. 94-1275 (N.M.I. Super. Ct. Jan. 17, 1996) (Findings of Fact and Conclusions of Law at 1).

[2] *Id.* The evidence of this sale consists of the testimony of Consolacion C. Togawa and Exhibit 5 introduced at trial. *Castro, supra* at 1. The exhibit shows that the land was sold by Jesus to NKK.

[3] *Id.* at 2.

[4] *Id.* at 4.

[5] In their complaint and in the Superior Court's Findings of Fact and Conclusions of Law, both Castro and the Superior Court refer to the property as escheated to the "Trust Territory Government." This Court notes that the "Trust Territory of the Pacific Islands," or "TTPI", more accurately describes the "government" in existence at that time. The basis for the denial of Santiago's claim and the registering of the land in the TTPI is the sale between Jesus and NKK.

[6] *Castro, supra* n. 1 at 4.

Court.[7]

¶6 In his complaint, Castro claimed that under Chamorro custom, Marcelliano's children each inherited an equal one-ninth share of the Wing Beach property and that Jesus was not authorized by his siblings to sell their interest to NKK back in 1933. Castro argued that a taking without compensation occurred when the property purportedly escheated to the TTPI. Castro now seeks compensation under the Public Purpose Land Exchange Authorization of 2 CMC § 4143(e)(3).[8] He filed suit without having attempted to seek administrative relief under the Act.

¶7 The case went to trial on August 15, 1995, and on January 17, 1996, the Superior Court entered judgment in favor of DLNR on the sole basis that Castro's claim was barred by the twenty- year statute of limitations of 7 CMC § 2502. Castro timely appealed.

## ANALYSIS

### I. The Public Purpose Land Exchange Authorization Does Not Create a Judicial Cause of Action.

¶8 Castro argues the Public Purpose Land Exchange Authorization ("PPLEA") authorizes this Court to lift the twenty-year statute of limitations on claims against the government for takings of property which occurred without compensation. Castro argues that the TTPI's taking without compensation amounts to a "taking", and this Court may lift the statute of limitations bar in order to redress past wrongdoing.

¶9 In 1984, the Third Legislature enacted Public Law 3-103, the Homestead Compensation Act ("Homestead Act"), 2 CMC § 4351 et seq., in response to section 7 of the Schedule on Transitional Matters, as a means to allow stale claims to be made with the Marianas Public Land Corporation ("MPLC") and to permit MPLC to compensate claimants through a homestead program.[9] The Homestead Act provides in its findings:

> The Legislature finds that there are many residents of the Northern Mariana Islands and their heirs who have been inadequately compensated for the transfer of their interests in and/or encroachments upon their lands that were caused by prior government action . . . . After five years of study . . . the legislature finds that the judicial doctrine of laches and the statue of limitations should no longer serve as an excuse to

deny compensatory relief to persons who have received no compensation or who have been inadequately compensated for these land takings and encroachments.

Id. There are several major categories of takings or encroachments which were inadequately compensated by prior government entities. Two of these categories may be applicable to the facts in this case. They are set forth in PL 3-103 § 2(a)(3) and (4)[9] which state as follows:

> (3) Those landowners whose lands the United States Naval Administration and Trust Territory government assumed were privately held by other persons or were public, because no persons or documents were examined to show otherwise, when in fact the lands were private; and

> (4) Those landowners whose lands the United States Naval Administration and the Trust Territory government assumed were public based on an initial translation of a document, which show that the land was sold. Upon a second translation, the documents revealed that the landowners sold only a right of way or some other interest.

¶10 Here, the TTPI assumed that all of Marcelliano's land was legally sold to NKK. Therefore, according to the TTPI, it became public land after the war when NKK disappeared and the land escheated to the TTPI.

¶11 Because section 7 of the Schedule on Transitional Matters authorized the legislature to grant compensation only through the homestead program, the legislature could not grant MPLC the authority to transfer fee simple interests in government lands as compensation for the taking of private lands. However, in the Second Constitutional Convention in 1985, the delegates amended Article XI, § 5(b) of the Constitution. This amendment authorizes MPLC to transfer freehold interests in public lands "for land exchanges to accomplish a public purpose as authorized by law." N.M.I. Const. art. XI, § 5(b). In response to this new constitutional amendment, the Fifth Legislature in 1987 enacted the PPLEA. The purpose of the PPLEA is to authorize MPLC to transfer land to private persons in exchange for private land acquired for public purpose. Title 2, § 4142 states:

> The legislature finds that such land exchanges are an effective and economical means of obtaining private land essential to public projects and *of resolving lawful claims against the government* (emphasis added).

---

[7] *Id.* at 2.

[8] *Id.*

[9] *See* Commission Comment to 2 CMC § 4351 et seq.

¶12 "Public purpose" is defined in 2 CMC § 4143(e) to include seven categories. Subsections 3 and 4 may be applicable to this case. They state as follows:

(3) Settlement of any claim where a court of competent jurisdiction has determined there was a taking or deprivation of private land by the government either without compensation or inadequate compensation;

(4) Provision of compensatory relief to persons or to their heirs or successors in interest who have received no compensation or who have been inadequately compensated for land takings or encroachments qualifying as cause for compensation under the Homestead Compensation Act of 1984.

¶13 ▇ We find, however, that there is nothing in the PPLEA which creates a cause of action upon which the Court can grant relief. The PPLEA only authorizes persons who believe that they are entitled to compensation to file claims for compensation with MPLC. The statute contemplates that MPLC will resolve those claims through its own administrative processes. If a claimant, like Castro, is aggrieved by MPLC's decision, relief can be had under the Administrative Procedures Act through an appeal to the Superior Court.

¶14 ▇ *Cort v. Ash*, 422 U.S. 66, 95 S. Ct. 2080, 45 L. Ed. 2d 26 (1975), is the leading case on whether or not a statute creates a cause of action. In that case, the Supreme Court identified four relevant factors in determining whether a private remedy is implicit in a statute not expressly providing one: (1) Is the Plaintiff one of the class for whose benefit the statute was enacted? (2) Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or deny one? (3) Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for Plaintiff? (The fourth test has relevance only to federal state jurisdiction and not to the substantive issue.)[10]

¶15 Subsequent cases have made it very clear that, where a statute expressly provides for a remedy, as the PPLEA does, courts should be very wary of reading other remedies into it. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 100 S. Ct. 960, 63 L. Ed. 2d 267 (1980); *Middlesex County Sewerage Auth. v. Nat' Sea Clammers Ass'n*, 453 U.S. 1, 101 S. Ct. 2615, 69 L. Ed.

2d 435 (1981).

¶16 Castro fails the test outlined in *Cort v. Ash*. While he is certainly one of the class for whose benefit the statute was enacted, there is *no* indication of legislative intent, explicit or implicit, to create a private remedy. If there is any indication of legislative intent, it is that claims be adjudicated by MPLC, and not by the courts. Moreover, it is not consistent with the underlying purposes of the legislative scheme to imply a private cause of action for a claimant. The statute is a simple one: people make claims to MPLC, and if MPLC grants them, MPLC gives them land in exchange. If MPLC denies a claim, relief can be had through an administrative appeal to the court. It is absolutely unnecessary to imply a judicial remedy when claimants already have an administrative one.

¶17 In this case, there was no administrative claim filed with MPLC. This case is not an appeal to the court from an adverse decision of MPLC under the PPLEA. Rather, it attempts to assert a direct cause of action for compensation, which the PPLEA does not authorize.

¶18 The PPLEA first came before the Court in *Apatang v. Marianas Pub. Land Corp.*, 1 N.M.I. 140 (1990). The *Apatang* court noted that the first issue which it needed to consider was "whether MPLC has a legal duty to compensate" the plaintiff for a "short exchange." *Apatang*. 1 N.M.I. at 146. The Court went on to award compensation for the "short exchange." However, the Court simply assumed that the claims authorized under the PPLEA were judicially cognizable. We find no support in the statute, or in *Apatang* itself, for such a proposition. To that extent, *Apatang* was wrongly decided.

¶19 Even if this were not the case, however, -- that is, even if the PPLEA authorized a direct cause of action against MPLC for compensation -- we find no support in the statute for the holding of the Court in *Apatang* (later limited in *Rios*) that no statute of limitations applies to suits directly against MPLC under the Act.[11] *Apatang* is correct in the sense that there is no statute of limitations for *filing claims with MPLC*. However, *Apatang* is *not* correct if it is read to say that the statute of limitations has somehow been abrogated if the PPLEA authorized a direct cause of action.

¶20 ▇ If the PPLEA did in fact authorize a direct cause of action, it is clear that the six-year statute of limitations of 7 CMC § 2505 would apply, and that no provision of Commonwealth law waives or abrogates this statute. We are unwilling to imply a waiver of the statute without a strong expression of clear legislative intent to do so.

¶21 We recognize that applying a six-year statute of limitations to claims under the PPLEA would mean that no

---

[10] *See also Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 97 S. Ct. 926, 51 L. Ed. 2d 124 (1977); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 99 S. Ct. 1946, 60 L. Ed. 2d 560 (1979): and Anno: *Implication of Private Right of Action from Provision of Federal Statute Not Expressly Providing for One -- Supreme Court Cases*, 61 L. Ed. 2d 910.

---

[11] "Here, by statute, any limitations bar . . . [has] been set aside to permit the filing of land exchange claims that were previously barred." *Apatang*. 1 N.M.I. at 156.

claim would ever survive in the courts. This only lends emphasis to the conclusion that the PPLEA itself was not intended to and did not create a direct cause of action, and that what it did do was authorize the filing of administrative claims with MPLC, as to which there is no statutory time bar.

¶22 The Court in *Rios* attempted to deal with the faulty logic of *Apatang* with respect to the statute of limitations problem. It stated, "We did not rule in *Apatang* that as to all actions involving land against MPLC, . . . the applicable statute of limitations can never be a bar." *Rios,* 3 N.M.I. at 521. *Rios* made it clear that the twenty-year statute of limitations of 7 CMC § 2502, applicable to actions to recover title to land, does apply where it is necessary to determine title to land prior to the taking which forms a basis for a claim under the PPLEA.

¶23 In the instant case, Castro's cause of action is deemed to have accrued in 1951, as provided by the statute.[12] Castro could have brought suit against the TTPI to recover title to his land, but the twenty-year statute of limitations would have applied, and his cause of action would have been barred after 1971.

¶24 The PPLEA was enacted precisely to address this problem. A claimant in the same situation as Castro here is authorized by the PPLEA to file a claim with MPLC. If Castro is entitled to compensation under the Homestead Compensation Act, because his share of the land was not sold, then MPLC can give him land in exchange for the land that the government has taken or return his original land to him.

¶25 Going back to the relevant provisions of the Homestead Compensation Act, the legislative findings provide in relevant part:

> . . . it is the intention of this article to provide priority with respect to homestead eligibility for those landowners and their heirs who can *prove by a preponderance of the evidence* that they were inadequately compensated by past governmental action for transfer of interest in and encroachment upon their land . . . . The Board of Directors for the . . . [MPLC] . . . has been selected by the legislature as the administrative body to weigh on a case basis the nature and extent of the land claims asserted by the landowners or their heirs. It is felt that upon request, the MPLC can conduct the proceedings in Chamorro or Carolinian and in a less formal and legalistic manner than that required by the court. The . . . [MPLC] . . . *shall not reject a*

*claim because of the doctrine of laches or the expiration of the statute of limitations.* In the event that the . . . [MPLC] . . . determines that an applicant's claim is justified in whole or in part, it *shall award* the applicant *compensation.*[13]

In addition, 2 CMC § 4355(b) states: "No applicant shall be denied eligibility in this program on account of the doctrine of laches or the running of the statute of limitations."

¶26 Based upon the above statutory language, laches and the statute of limitations are not a bar to Castro's claims. However, such claims must be made to MPLC which decides them based upon the preponderance of the evidence. If claimants shows that they are entitled to compensation, then MPLC *shall* compensate them. Since the enactment of the PPLEA, MPLC may transfer a freehold interest to individuals whose lands have been taken without compensation.

¶27 ■ In other words, if Castro proves by a preponderance of the evidence that the land in question originally belonged to his father; that his father died leaving nine heirs who became owners of the land in common; that one sibling purported to sell the entire land to NKK without the consent of the others or the legal authority to do so on their behalf; and that the government mistakenly determined that all of the land belonged to the TTPI by virtue of the sale to NKK; then MPLC is required to compensate him. If MPLC refuses, the Administrative Procedure Act allows the courts to review the decision of MPLC upon the claim.

¶28 The amended answer to the Complaint alleges that "the Complaint does not plead a cause of action." E.R. at 12. Although the parties focus on the statute of limitations defense, we remand this case to the Superior Court with directions to dismiss it for failure to state a cause of action. Castro is instructed by this decision that he can file a claim under the Public Purpose Land Exchange Act with the Division of Public Lands (MPLC), and that the courts can subsequently review the claim under the Administrative Procedure Act.

## CONCLUSION

¶29 For the foregoing reasons, we hereby **REVERSE** the decision of the Superior Court and **REMAND** with instructions to dismiss this claim for failure to state a cause of action.

---

[12] 7 CMC § 2510 provides that " . . . any cause of action existing on May 28, 1951, shall be considered to have accrued on that date."

[13] 2 CMC § 4351 *Commission Comment* (emphasis added).